UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN MANN, et al.,

      Plaintiffs,

                              Case No. C2-00-706
  v.                            **JUDGE GREGORY L. FROST**
                              **Magistrate Judge Terence P. Kemp**

REGINALD WILKINSON, et al.,

      Defendants.

## OPINION AND ORDER

      Plaintiff brings this action under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000 cc-1 and the Civil Rights Act of 1871, 42 U.S.C. § 1983. This matter comes on for consideration of Defendants' Fifth Motion for Summary Judgment. (Doc. # 166.) For the reasons that follow, the Court **GRANTS** Defendants' motion.

### I. Background

      Plaintiff Brian Mann is a prisoner in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") and is incarcerated at the Southern Ohio Correctional Facility ("SOCF"), a maximum-security prison. Plaintiff is serving a life sentence for murder. Plaintiff filed this lawsuit June 22, 2000, alleging that Defendants had violated his constitutional right to the free exercise of his religion. Although the case initially had several plaintiffs, Mann is the only one who remains. The only remaining defendants are former ODRC Director Reginald Wilkinson and former ODRC Religious Services Administrator David Schwarz, both of whom are now retired.

      This case has a very lengthy history due, in part, to challenges made to the

constitutionality of RLUIPA.[1]   On December 21, 2007 the Court issued an Opinion and Order which left viable only Plaintiff's claim related to religious literature.  (Doc. # 154.)

The facts set forth in this section are taken from the Court's December 21, 2007 Opinion and Order and from the additional evidence submitted with the parties' briefing of the fifth motion for summary judgment.

> Mr. Mann is a member of a Christian Identity Church.  The Court will summarize the belief system of that church later in this opinion.  Generally, however, the Christian Identity Church believes that the teachings of the Bible are intended for the White race only and that any mixing of the races is contrary to God's intent.
>
> Mr. Mann is confined at the [SOCF] in Lucasville, Ohio . . . .  [In connection with his requests for separate worship services] Mr. Mann submitted a pamphlet from the Christian Identity Church including that church's "Doctrinal Statement of Beliefs."
> . . . . .
>
> Mr. Mann's religious literature claim arises from the fact that prison officials, after reviewing the doctrinal pamphlet he provided to them, refused to return it to him.  A copy of that pamphlet has been submitted into court as part of document #131.  According to a memorandum prepared by Gary Sims, the religious services administrator at SOCF, the pamphlet was not returned to Mr. Mann "because of the racist content."  Although much of the pamphlet consists of a statement of beliefs supported by reference to passages contained in the Old and New Testaments, there are certain statements which can readily be described as racist.
>
> For example, one of the beliefs of the Christian Identity Church is that "the White Anglo-Saxon, Germanic and kindred people [are] God's true, literal Children of Israel" and that this group of people "stands far superior to all other peoples in their call as God's servant race . . . ."  The pamphlet describes Jews as "children of Satan" and "a race of vipers . . . . [and] anti-Christs . . . ."  Adherents of Christian Identity believe that the White race is "called to come out and be a separated people," a calling which "includes segregation from all non-white races.

---

[1] Because the United States Court of Appeals for the Sixth Circuit held that RLUIPA violated the Establishment Clause, *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003), this Court dismissed Plaintiff's complaint for want of jurisdiction.  (Docs. # 90, 91.)  Subsequently, the United States Supreme Court reversed the Sixth Circuit, *Cutter v. Wilkinson*, 544 U.S. 709 (2005), and this case was reopened.  (Doc. # 98.)

> . . ." The pamphlet describes "racemixing" as "an abomination in the sight of Almighty God . . . ." The pamphlet also describes homosexuality as "an abomination before God" which "should be punished by death."
>
> The decisions to deny Mr. Mann's request . . . to possess a copy of the pamphlet in question were not made in a vacuum. SOCF is a maximum security prison. On April 11, 1993, the worst prison riot in Ohio history began at that institution. It is generally believed that the desire for racial separation was one of the contributing factors to the riot. Additionally, some of the riot planning took place during congregate worship services. According to the declaration of Edwin C. Voorhies, Jr., the Warden at SOCF, "publications advocating racism or hatred of any particular race pose a high risk to the safety and security of inmates and staff . . . at SOCF." Nevertheless, Warden Voorhies also declares that there is no *per se* ban on such publications, but that prison officials restrict them more severely at SOCF than at other institutions with lower security levels or which lack the history of racial violence that is present at SOCF.

(Doc. # 154 at 2-4.)

After this Court issued its Opinion and Order that left only Plaintiff's claim of unconstitutional denial of religious literature, the Court granted Plaintiff's motion for the appointment of counsel and the parties began to prepare for trial. However, Defendants informed the Court that, "in a good faith effort to resolve this lawsuit and without acknowledging liability, Defendants" returned the religious literature at issue to Plaintiff and, therefore, that claim has been rendered moot. (Doc. # 166 at 3.)

Plaintiff disagreed with Defendants' characterization of the scope of Plaintiff's surviving claim, arguing that it included more than the literature that Defendants returned to him. The Court directed the parties to brief this issue, which Defendants have presented in the form of a fifth motion for summary judgment. (Doc. # 166.) Plaintiff, now represented by counsel, opposed Defendants' motion (Doc. # 168), and Defendants' filed a reply in support of their motion (Doc. # 169).

## II.  Standard

3

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255.

Summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251. The Court, however, may not make credibility determinations or weigh the evidence. *Id.* at 255.

### III. Analysis

Defendants argue that because they returned to Plaintiff the Christian Identity Church's doctrinal statement of beliefs, his religious literature claim has been rendered moot insofar as it requests injunctive relief. Further, Defendants contend that since monetary damages are not available to Plaintiff, Defendants should be granted summary judgment on Plaintiff's claim insofar as it requests monetary damages.

Plaintiff, however, contends that his religious literature claim encompasses more that the doctrinal statement that was returned to him.  Plaintiff, therefore, concludes that being given that statement does not render his entire religious literature claim moot.  Plaintiff's argument is not well taken.

**A.  Plaintiff's Religious Literature Claim is Limited to the Christian Identity Church's Doctrinal Statement.**

In Plaintiff's memorandum opposing Defendants' Fifth Motion for Summary Judgment, Plaintiff argues:

> Plaintiff Brian Mann ("Mann") does not simply seek the return of a single Christian Identity pamphlet.  Rather, as Mann has articulated in multiple pleadings and other documents, his claim is much broader than that.  For instance, in his original Complaint, filed in March 2000, Mann alleges that Defendants have prohibited his access to "Christian Identity literature" and specifically cites examples such as "books, videos, cassettes, etc." (Compl. at 3.)  Mann's Amended Complaint, filed September 20, 2005, likewise seeks access to "religious literature." (Am. Compl. ¶3, Doc. No. 100.)
>
> In his response to Defendants' Fourth Motion for Summary Judgment, Mann's description of the "Christian Identity publications sought to be received by Plaintiff Mann" is just as broad. (Pl.'s Resp. at 5, Doc. No. 138.)  Most illuminating, however, is the fact that the pamphlet at issue was not even confiscated until 2005 – years after Mann filed his original complaint.  Under a liberal construction of Mann's *pro se* Complaint and other filings, Mann has successfully maintained a claim that relates to more than a single pamphlet.  Therefore, Mann's claim is not moot and the Court should deny Defendants' Fifth Motion for Summary Judgment.

(Doc. # 168 at 1.)

While Plaintiff and his attorneys make a persuasive argument related to Plaintiff's intention to maintain a religious literature claim that includes more that the doctrinal statement that has been returned to him, the argument is to no avail.  This Court has necessarily accepted that Plaintiff's denial of religious literature claim is limited to the Church's doctrinal statement

5

for several reasons.

First, this Court simply cannot decide whether certain literature has been unconstitutionally withheld unless it is privy to the actual document. No specific piece of literature has been named in any of Plaintiff's filings whatsoever, including the instant opposition (Doc. # 168). The only specific piece of religious literature before this Court is the Christian Identity Church's doctrinal statement of beliefs. (Doc. # 131, Exhibit A-4.) Consequently, that statement is the only document on which the Court has any factual basis for making a determination.

Further, this Court cannot, as Plaintiff suggests, order SOCF to lift all restrictions on any religious literature Plaintiff wishes to possess. As Defendants have noted, Article III of the United States Constitution precludes courts from deciding generalized conclusions and policies. U.S. Const. art. III, § 2. Instead, the Constitution requires a live case or controversy based on concrete facts and evidence. *Allen v. Wright*, 468 U.S. 737, 750 (1984); *NRA of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). A judicial decision requires that a court be provided with the specific piece of literature in issue in order to evaluate whether a plaintiff's constitutional rights have been violated by its exclusion. This Court is without authority to determine whether some unnamed and unknown piece of literature should be permitted into the prison, or whether the law is violated by its exclusion. Any such generalized and conclusory determination would not only run afoul of Article III, but it would also be impracticable to administer. The only specific piece of literature designated by either party as being at issue in the instant case was the Christian Identity Church's doctrinal statement of beliefs.

Recently, the United States Court of Appeals for the Sixth Circuit addressed similar

generalized claims of constitutional violations in the prisoner civil rights case of *Harden-Bey v. Rutter*, 524 F.3d 789 (6th Cir. 2008). The Sixth Circuit rejected these generalized, conclusory claims and required specific evidence to be presented stating, " 'conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.' " *Id.* at 796 (quoting *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)).  Similarly, in the instant action, conclusory and generalized references to "religious literature" without specific items of literature for the Court to consider must be dismissed.

Second, the doctrinal pamphlet was the subject of Defendants' fourth motion for summary judgment, of Plaintiff's opposition thereto, and of this Court's decision denying summary judgment on that claim.  This Court unequivocally stated that the only religious literature claim before it was based upon the Christian Identity Church's doctrinal statement of beliefs:

> Mr. Mann's religious literature claim arises from the fact that prison officials, after reviewing the doctrinal pamphlet he provided to them, refused to return it to him.  A copy of that pamphlet has been submitted into court as part of document #131.
> . . . .
>
> Under RLUIPA, 42 U.S.C. §2000cc-1, "[n]o government shall impose a substantial burden on the religious exercise of a person . . . confined to an institution" unless the government can demonstrate that the burden furthers a compelling governmental interest and is the least restrictive means available to further that interest.
> . . . .
>
> First, because the pamphlet sets forth the core beliefs of the religion, preventing Mr. Mann from possessing this document at least arguably poses a substantial burden on his exercise of his chosen religion.  Thus, the questions with respect to the pamphlet are whether there is a compelling state interest in prohibiting Mr. Mann from possessing this pamphlet, and whether the outright ban on its possession is the least restrictive means available to the State to further that interest.

(Doc. # 154 at 5, 7, 9.)  After several pages of further analysis, specific only to the doctrinal statement, this Court concluded that there were "factual disputes about whether the total ban on this particular pamphlet is consistent with RLUIPA."  *Id.* at 13.

If Plaintiff disagreed with the scope of this Court's analysis, he certainly could have requested reconsideration or relief from judgment.  Plaintiff, however, failed to take any action to have this Court reconsider the scope of its analysis or its conclusion.  While the Court is congnizant that Plaintiff was proceeding without the assistance of counsel at that time, the Court is also aware of the fact that Plaintiff is well versed in Rule 60 of the Federal Rules of Civil Procedure as he demonstrated in his Rule 60(b) Request for Relief From Judgment previously filed in this action.  (*See* Doc. # 92.)

Finally, the issue of exhaustion of administrative remedies, a prerequisite to bringing a claim in this Court, has already been litigated before this Court and no other documents have been determined to have been properly exhausted.  (*See* Docs. # 86, 88, 89, 101, 102, 103, 105.)

Accordingly, the scope of Plaintiff's remaining claim is limited to the Christian Identity Church's doctrinal statement of beliefs.

**B.  Plaintiff's Request for Injunctive Relief is Moot.**

Defendants argue that, because Plaintiff's religious literature claim is limited to the doctrinal statement of his religion, the claim has been rendered moot by Defendants' voluntary action of returning the document to him.  A case becomes moot 'when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome.' "  *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Although Defendants' action of returning to Plaintiff the religious document at issue here appears to render Plaintiff's claim moot, the analysis is not so simple. Indeed, "[a]s a general rule, 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.' " *Davis*, 440 U.S. at 631 (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). The United States Court of Appeals for the Sixth Circuit has explained the standard applied in voluntary cessation cases as follows:

> A case may be mooted by a defendant's voluntary conduct only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,' *Friends of the Earth* [*v. Laidlaw Envtl. Servs. (TOC), Inc.*, , 528 U.S. [167,] 189 [(2000)] (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)), and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). The heavy burden of demonstrating mootness rests on the party claiming mootness. *Friends of the Earth*, 528 U.S. at 189.

*Ammex, Inc. v. Cox*, 351 F.3d 697, 704-05 (6th Cir. 2003). This rule is meant to protect a party from an opponent who seeks to defeat judicial review by temporarily altering its behavior. *See City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001) (citations omitted).

There is, however, a "difference in the way voluntary cessation of illegal activities is treated when the offending parties are government officials rather than private parties." *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990). Cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties. According to one commentator, such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine. *See* 13A Wright, Miller & Cooper Federal Practice and Procedure § 3533.7, at 353 (2d ed. 1984).

9

With regard to voluntary cessation cases, the United States Supreme Court has explained the "underlying concern is that, when the challenged conduct ceases such that 'there is no reasonable expectation that the wrong will be repeated,' *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953), then it becomes impossible for the court to grant 'any effectual relief whatever' to [the] prevailing party,' " *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. at 12 and *Mills v. Green*, 159 U.S. 651, 653 (1895)).  "In that case, any opinion as to the legality of the challenged action would be advisory." *Id.*

Accordingly, the Court must decide whether it is clear that Defendants' allegedly unconstitutional actions are not "reasonably likely to recur" and whether the "interim relief" provided by Defendants has "completely and irrevocably eradicated the effects of the alleged violation" against Plaintiff so that this Court could not "grant any effectual relief whatever" to Plaintiff.

Defendants have shown that the process for review of religious literature in place at the time Plaintiff's religious pamphlet was excluded has been changed.  No longer is the prison chaplain responsible to screen religious literature with appeal to the ODRC religious services administrator.  (Doc. # 141, Exhibit A-Declaration of Donald York.[2])  Instead, all printed material, religious and non-religious alike, is screened by the prison warden with appeal to the ODRC Central Office Publication Screening Committee.  (Doc. # 131, Exhibit D-Declaration of Austin Stout.[3])  The criteria for screening is the same for religious and non-religious printed

---

[2]Mr. York is the chaplain at SOCF.

[3]Mr. Stout is assistant chief legal counsel at ODRC.

10

material. That is, each document or publication that an inmate at SOCF wishes to posses is screened pursuant to Section 5120-9-19 of the Ohio Administrative Code. That section requires that "[a]ll printed materials are subject to security inspection and review" before they may be possessed by an inmate. Ohio Admin. Code § 5120-9-19(B)(1). That regulation also requires certain material to be confiscated:

> Printed material is excludable if it is deemed to be detrimental to, or to pose a threat to the rehabilitation of inmates; the security of the institution; or, the good order or discipline of the institution.

*Id.* at § 5120-9-19(C). Finally, the regulation sets forth the specific procedures for review and for appeal of the decision made regarding the confiscation of any printed material. *See id.* § 5120-9-19(D)-(L).

These changes in the screening process made by Defendants convince this Court that recurrence of improper withholding of religious publications is certainly unlikely. Moreover, the interim relief has "completely and irrevocably eradicated the effects of the alleged violation" against the Plaintiff so that this Court could not "grant any effectual relief whatever" to him.

Consequently, even when viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the evidence is such that no reasonable jury could return a verdict for him. Accordingly, the Court **GRANTS** Defendants' Fifth Motion for Summary Judgment on Plaintiff's claim for injunctive relief as it relates to his cause of action for the denial of religious literature.

### C. Plaintiff is Not Entitled to Monetary Damages.

Even if Plaintiff's denial of religious literature claim survived summary judgment,

Plaintiff would not have been entitled to monetary damages from Defendants.  The Prison Litigation Reform Act prohibits any damages recovery to a prisoner who fails to allege an underlying physical injury.  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").  Here, it is uncontroverted that Plaintiff did not suffer any physical injury as the result of Defendants' alleged violations of his right to possess religious literature in prison.

Thus, even when viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue as to any material fact making it necessary to resolve the difference at trial. Accordingly, the Court **GRANTS** Defendants' Fifth Motion for Summary Judgment on Plaintiff's claim for monetary damages as it relates to his cause of action for denial of religious literature.

### IV.  Conclusion

Based on the foregoing, the Court **GRANTS** Defendants' Fifth Motion for Summary Judgment.  (Doc. # 166.)  The Clerk is **DIRECTED** to **ENTER FINAL JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**